IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
Civil Action No.: 7:21-CV-174

CARMEN ELECTRA a/k/a TARA LEIGH )
PATRICK, CLAUDIA SAMPEDRO, )
JAIME EDMONDSON LONGORIA, )
JOANNA KRUPA, KRYSTAL FORSCUTT )
HIPWELL, LINA POSADA, LUCY )
PINDER, MEGAN DANIELS a/k/a )
MEGAN VOGT, PAOLA CAÑAS, VIDA )
GUERRA, and RHIAN SUGDEN, )
                              )
           Plaintiffs, )
                              )
    v. )
                              )
AMPARO GONZALES SYLVAIN d/b/a )
CAVE GENTLEMEN'S CLUB and )
AMPARO SYLVAIN, )
                              )
           Defendants. )
_____ )

**COMPLAINT**

**JURY TRIAL DEMANDED**

      Plaintiffs Carmen Electra a/k/a Tara Leigh Patrick; Claudia Sampedro; Jaime Edmondson

Longoria; Joanna Krupa; Krystal Forscutt Hipwell; Lina Posada; Lucy Pinder; Megan Daniels

a/k/a Megan Vogt; Paola Cañas; Vida Guerra; Rhian Sugden, (collectively, "Plaintiffs"), file this

Complaint against Amparo Gonzales Sylvain d/b/a Cave Gentlemen's Club and Amparo Sylvain,

(collectively "Defendants"), and respectfully allege as follows:

## BACKGROUND

      1.      This is an action for damages and injunctive relief relating to Defendants'

misappropriation, alteration, and unauthorized publication and use in advertising of Images of

Plaintiffs, each of whom are well-known professional models, to promote their strip club, Cave

Gentlemen's Club, located in Jacksonville, North Carolina ("Cave" or the "Club").

      2.      As detailed below, Defendants' misappropriation and unauthorized use of

- 1 -

Plaintiffs' Images, photos and likenesses (collectively, "Images") constitutes: a) violation of section 43 of the Lanham Act, 15 U.S.C. § 1125(a)(1), which prohibits both false or misleading representations of fact in commercial advertising and the false or misleading use of a person's image for commercial purposes; b) violation of each Plaintiff's common law right of privacy - misappropriation; d) violation of North Carolina's Unfair & Deceptive Trade Practices Act, N.C. Gen. Stat § 75-1.1 *et seq.*; e) defamation; and f) various common law torts, including conversion.

3. In addition to the actual, compensatory, and exemplary damages set forth below, Plaintiffs likewise seek an Order from this Court permanently enjoining Defendant(s) from using any of their Images in any way and through any medium.

## JURISDICTION & VENUE

4. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiffs have stated claims under the Lanham Act, 15 U.S.C. § 1125(a)(1).

5. This Court has jurisdiction over the state law claims asserted, pursuant to 28 U.S.C. § 1367.

6. Plaintiffs are, and at all times relevant to this action have been, professional models who reside throughout the United States.

7. According to publicly available records, defendant Amparo Gonzales Sylvain is an individual operating under the laws of the state of North Carolina, who operates Cave, which is located 531 Richland Highway, Jacksonville, North Carolina 28540.

8. Venue is proper in the United States District Court for the Eastern District of North Carolina because Defendants' principal place of business in Jacksonville, North Carolina.

9. A significant portion of the alleged causes of action arose and accrued in Jacksonville, North Carolina and the center of gravity for a significant portion of all relevant

events alleged in this complaint is predominately located in Jacksonville, North Carolina.

## PARTIES

*Plaintiffs*

10.     Plaintiff Carmen Electra a/k/a Tara Leigh Patrick ("Electra") is a well-known professional model, and a resident of Los Angeles County, California.

11.     Plaintiff Claudia Sampedro ("Sampedro") is a well-known professional model, and a resident of Miami-Dade County, Florida.

12.     Plaintiff Jaime Edmondson Longoria ("Longoria") is a well-known professional model, and a resident of Maricopa County, Arizona.

13.     Plaintiff Joanna Krupa ("Krupa") is a well-known professional model, and a resident of Los Angeles County, California.

14.     Plaintiff Krystal Forscutt Hipwell ("Hipwell") is a well-known professional model, and a resident of Australia.

15.     Plaintiff Lina Posada ("Posada") is a well-known professional model, and a resident of San Bernardino County, California.

16.     Plaintiff Lucy Pinder ("Pinder") is a well-known professional model, and a resident of England.

17.     Plaintiff Megan Daniels a/k/a Megan Vogt ("Daniels") is a well-known professional model, and a resident of Orange County, California.

18.     Plaintiff Paola Cañas ("Cañas") is a well-known professional model, and a resident of Miami-Dade County, Florida.

19.     Plaintiff Vida Guerra ("Guerra") is a well-known professional model, and a resident of Los Angeles County, California.

20.     Plaintiff Rhian Sugden ("Sugden") is a well-known professional model, and a resident of England.

***Defendants***

21.     Defendant Amparo Gonzales Sylvain is an individual who owns Cave Gentlemen's Club in Jacksonville, North Carolina.

22.     Defendant Amparo Sylvain is the owner of Cave Gentlemen's Club who himself, upon information and belief, was the natural person who directed, supervised, participated in, and is responsible for the wrongful acts and omissions complained of herein.

23.     Service of process may be perfected upon Amparo Gonzales Sylvain by serving the registered agent for service of process, Amparo Sylvain who can also be served in his capacity as an individual Defendant at 531 Richland Highway, Jacksonville, North Carolina 28540.

## FACTUAL ALLEGATIONS

24.     Each Plaintiff is a well-known professional model who earns her livelihood modeling and licensing her Images to companies, magazines and individuals for the purpose of advertising products and services.

25.     Plaintiffs' careers in the modeling industry place a high degree of value on their good will and reputation, which is critical to maximize their earning potential, book modeling contracts, and establish each of their individual brands. In furtherance of establishing, and maintaining, their brands, Plaintiffs are necessarily selective concerning the companies, and brands, for which they model.

26.     Each of the Plaintiffs' Images was misappropriated, and intentionally altered, by Defendants to make it appear that they worked at, endorsed, or were otherwise associated or

- 4 -

affiliated with Defendants.

27.    In the case of each Plaintiff, this apparent claim was false.

28.    Moreover, this misappropriation occurred without any Plaintiff's knowledge, consent, or authorization.

29.    No Plaintiff has ever received any remuneration for Defendants' improper and illegal use of their Images, and Defendants' improper and illegal use of Plaintiffs' Images have caused each Plaintiff to suffer substantial monetary damages and harm to reputation.

30.    Further, in certain cases Defendants misappropriated Plaintiffs' advertising ideas because the Images they misappropriated came from Plaintiffs' own social media pages, which each Plaintiff uses to market to potential clients, grow their fan base, and build and maintain their brand.

31.    In other cases, Defendants misappropriated Plaintiffs' Images from other sources through unlawful violation of copyrights and or licenses that were not and never were held by Defendants.

***Plaintiffs' Individual Backgrounds and Careers***

32.    Plaintiff Electra is an actress, recording artist, author, and entrepreneur. With an impressive body of work that encompasses dance, television, film, comedy, music, and theatre. Electra is one of Hollywood's most versatile personalities. She attended Cincinnati's School for Creative and Performing Arts. After graduating high school in 1991 Electra moved to Los Angeles and caught the eye of Prince, who produced her self-titled album on his Paisley Park record label. Electra ventured into acting with regular roles on *Baywatch* and MTV's *Singled Out*. She has since made the move to the big screen with starring roles in blockbuster hits including *Scary Movie*, *Dirty Love*, *Cheaper by the Dozen 2*, and *Meet the Spartans*. Electra attained the role as the face of MAX Factor following in the famous footsteps of Marilyn Monroe and Jaclyn Smith. In 2006,

- 5 -

Electra became a published author with the release of her book, "How to be Sexy." She also formed the dance troupe, The Bombshells, who perform nationwide, and released the fitness DVD series, *Carmen Electra's Aerobic Striptease*. In 2009, Electra appeared on stage in MGM Grand Vegas' Crazy Horse Burlesque Show to sold-out audiences during the summer and fall of the year. In 2010, she starred in the film, *Oy Vey, My Son is Gay* and *2-Headed Shark Attack*, alongside Charlie O'Connell, served as a guest judge on *Britain's Got Talent*, and made reoccurring guest appearances on CW's hit show, *90210*. In November of 2012, Electra released her return-to-music single, "I Like it Loud," featuring Grammy-nominated producer Bill Hamel. The single, which delves into Electra's fun and playful side, marks 20 years since she first burst onto the Hollywood circuit. "I Like It Loud" hit the #25 spot on Billboard's Dance Club Play Chart, the sultry songstress was on fire, turning up the heat for audiences, including *The Wendy Williams Show*, Cyndi Lauper's *Home For The Holidays* charity event, the notorious White Party in Palm Springs, and the Life Ball in Vienna. In June of 2014, Electra released 'Werq', which was followed by the release of the music video. She also released her hottest single yet, 'Around The World'. As a "Thank You" to her global supporters. In November 2015, Electra performed a few of her hits in Russia at the "Favourites of the Moon" festival. During that same month, Electra launched her perfume, "Carmen Electra", with FragranceNet. Electra can most recently be seen as the host of WEtv's new reality docuseries "Ex Isle" which premiered January 8th, 2016. She has over 2.9 million Facebook followers, 1 million Instagram followers, and 364 thousand Twitter followers.

33. That we know of, Electra is depicted in the photo in Exhibit "A" to promote Cave on its Facebook page. This Image was intentionally altered to make it appear that Electra was either a stripper working at Cave, that she endorsed Cave, or that she was otherwise associated or affiliated with Cave.

34. Electra has never been employed at Cave, has never been hired to endorse Cave, has never been otherwise associated or affiliated with Cave, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

35. Plaintiff Sampedro is a Cuban born model, mother, and spokeswoman. Sampedro moved to Miami when she was 6 years old and at 16, was discovered by Elite models. Sampedro has appeared in many catalogues, and magazine editorials. She has a number of cover credits for magazines such as *Nine 5 Four, Shock, Face to Face* and *Mixed*. Sampedro is a sponsored model for Nutri Sups Nutrition and is also a spokesmodel and contracted model for Bare Ava. Sampedro is in the Social Media Influencers top class with over a million Instagram followers and a further combined half million fans on Facebook and Twitter. Sampedro has three children, and is married to former Green Bay's star defensive end Julius Peppers.

36. That we know of, Sampedro is depicted in the photo in Exhibit "B" to promote Cave on its Facebook page. This Image was intentionally altered to make it appear that Sampedro was either a stripper working at Cave, that she endorsed Cave, or that she was otherwise associated or affiliated with Cave.

37. Sampedro has never been employed at Cave, has never been hired to endorse Cave, has never been otherwise associated or affiliated with Cave, has received no remuneration for Defendant's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

38. Plaintiff Longoria comes from a family of police officers. She graduated from Florida Atlantic University with a degree in Criminal Justice in 2002. She worked the night shift as a police officer in Boca Raton, Florida for two years until quitting to become a cheerleader for

the Miami Dolphins. Longoria and fellow Miami Dolphins cheerleader Cara Rosenthal were participants in the competitive reality TV series "The Amazing Race 14." Longoria was Playmate of the Month in the January 2010 issue of *Playboy*. She has been a sports blogger for Playboy online and co-host of Sirius Fantasy Sports Radio. She appeared on "The Bunny House" documentary, in the Trace Adkins video for "This Aint No Love Song," and numerous other television, print, radio, and online outlets. Longoria and her husband, MLB Superstar Evan Longoria have 2 children.

39.     That we know of, Longoria is depicted in the photos in Exhibit "C" to promote Cave on its Facebook page. These Images were intentionally altered to make it appear that Longoria was either a stripper working at Cave, that she endorsed Cave, or that she was otherwise associated or affiliated with Cave.

40.     Longoria has never been employed at Cave, has never been hired to endorse Cave, has never been otherwise associated or affiliated with Cave, has received no remuneration for Defendant's unauthorized use of her Images, and has suffered, and will continue to suffer, damages as a result of same.

41.     Plaintiff Krupa is, and at all times relevant to this action was, a Polish American model, actress, and dancer. She was named the "Sexiest Swimsuit Model in the World" and has appeared on the cover of magazines such as *Personal, Steppin' Out, Envy, Shape, FHM, Stuff, Inside Sport, Teeze, Maxim*, and twice for *Playboy*. Krupa has also graced the covers of South African *GQ*, and the Polish editions of *Cosmopolitan, InStyle, Glamour*, and *Grazia*. Krupa was voted "Model of the Year" in Maxim's 2004-2005 German edition and was ranked #55 in Maxim's "Hot 100" 2011 edition and was voted "Model of the Year" in Maxim's 2004-2005 German edition. She has appeared on the cover of Playboy magazine twice, modeled for PETA,

and founded an animal rescue group, Angels For Animal Rescue, with her friend Gabi Gutierrez. In addition, Krupa has appeared in "The Underground Comedy Movie" (1999) (2010 re-issue), "Planet of the Apes" (2001), "The Man Show" (2002–2003), the action film "Max Havoc: Curse of the Dragon," (2004), "Las Vegas" episode "Degas Away with It" (2004), "CSI: Crime Scene Investigation" episode "Kiss-Kiss, Bye-Bye" (2006), "The Dog Problem" (2006), "Scary Movie 4" (2006), "Ripple Effect" (2007), "Skinner Box" (2007),the television show "Superstars" (June 2009), and in Season 9 of "Dancing with the Stars." (2009), "Szymon Majewski Show" (Polish TV talk show) (2010), Krupa was a cast member for the reality TV show "The Real Housewives of Miami" (2012–2013), "Ridiculousness" (2014), and has been the host and head judge in Poland's "Next Top Model" since 2010.

42.     That we know of, Krupa is depicted in the photo in Exhibit "D" to promote Cave on its Facebook page.  This Image was intentionally altered to make it appear that Krupa was either a stripper working at Cave that she endorsed Cave, or that she was otherwise associated or affiliated with Cave.

43.     Krupa has never been employed at Cave, has never been hired to endorse Cave, has never been otherwise associated or affiliated with Cave, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

44.     Plaintiff Hipwell is an Australian model and reality TV contestant and personality. Ms. Hipwell has appeared on over 20 Men's magazine covers such as *Zoo Weekly*, *FHM*, and *Ralph* as well as the video game Need for Speed: ProStreet. Ms. Hipwell starred in Australian Big Brother series and then another Australian reality show, It Takes Two. Ms. Hipwell then became a regular guest on Bigpond GameArena, Benny and Richie show, and the

- 9 -

long running series Packed to the Rafters. Hipwell is married to Neil Hipwell and together they have an extremely successful building and renovations company Future Flip (www.futureflip.com.au).

45.     That we know of, Hipwell is depicted in the photo in Exhibit "E" to promote Cave on its Facebook page. This Image was intentionally altered to make it appear that Hipwell was either a stripper working at Cave, that she endorsed Cave, or that she was otherwise associated or affiliated with Cave.

46.     Hipwell has never been employed at Cave, has never been hired to endorse Cave, has never been otherwise associated or affiliated with Cave, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

47.     Plaintiff Posada is a fashion model and designer. A native of Colombia, Posada is best known as a model for the Besame and Espiral lingerie collections. Posada has also modeled for Paradizia Swimwear, Babalu Swimwear, Irgus Swinwear, Ujeans, as well as many others. She currently has 95.1 thousand Instagram followers, 2.99 thousand YouTube subscribers, 8,931 Facebook followers, and over 5.6 thousand Twitter followers.

48.     That we know of, Posada is depicted in the photos in Exhibit "F" to promote Cave on its Facebook page. This Image was intentionally altered to make it appear that Posada was either a stripper working at Cave that she endorsed Cave, or that she was otherwise associated or affiliated with Cave.

49.     Posada has never been employed at Cave, has never been hired to endorse Cave, has never been otherwise associated or affiliated with Cave, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer,

damages as a result of same.

50.    Plaintiff Pinder is, and at all times relevant to this action was, an English model, actress, host, businesswoman, and one of Great Britain's most famous glamour models. Pinder has featured in publications such as *FHM, Nuts, Loaded, The Daily Star,* and hundreds of others. Pinder has appeared on *FHM's* list of the "100 Sexiest Women in the World" in 2005, 2006, and 2007. She was a guest columnist in *Nuts*, entitled "The Truth About Women" and appeared on the final edition of the *Nuts* magazine cover. Pinder has collaborated with major brands such as Unilever (Lynx) and Camelot (National Lottery) among others, and on large national and international advertising campaigns. Pinder has an established an acting career with many TV appearances and Film credits. She has appeared on shows such as *I'm Famous and Frightened*, *Soccer AM, Weakest Link, Nuts Tv (host) MTV's TMF (presenter), Hotel Babylon,* and *Team and Bo!* in the USA. Pinder was also a contestant on *Celebrity Big Brother*. Pinder starred in films such as *The Seventeenth Kind, Age of Kill,* and *Warrior Savitri*. Pinder works closely with a number of Wildlife charities and is involved in fundraising for Tiger Time, The David Shepherd Wildlife Foundation and International Animal Rescue. Pinder has also worked with *Help for Heroes* appearing in the *Hots Shots* fund raising calendar and supported Male Cancer Awareness Campaign taking part in their MCAC London Strut awareness initiative. She also visited troops in Afghanistan in 2007. Pinder's own annual calendar continues to be one of the bestselling model calendars year after year and enhances Pinder's status as an elite class of Social Media Influencers with a combined total of over 2 million followers on Facebook, Instagram, and Twitter.

51.    That we know of, Pinder is depicted in the photo in Exhibit "G" to promote Cave on its Facebook page. These Images were intentionally altered to make it appear that Pinder was

either a stripper working at Cave that she endorsed Cave, or that she was otherwise associated or affiliated with Cave

52.     Pinder has never been employed at Cave, has never been hired to endorse Cave, has never been otherwise associated or affiliated with Cave, has received no remuneration for Defendant's unauthorized use of her Images, and has suffered, and will continue to suffer, damages as a result of same.

53.     Plaintiff Daniels is an International DJ and model. As a model Daniels has featured in ad campaigns with Snoop Dogg, Famous Stars and Straps, Radii Shoes, and Gears of War. Daniels has also graced the covers of many magazines including *American Curves Magazine, Heavy Metal magazine, Ink Junkie Magazine, Outlaw Biker Magazine, Tattoo Magazine, Obscene Magazine, Strobe Magazine, Tattoos for Men, Lowrider Magazine, Rebel Ink Magazine, Street King Magazine, Tattoo Feuerwerk, Maxim's Best of the Web, Muscle Mag, Inked Magazine, Alt Girls Magazine,* and many more. As a DJ Daniels has toured all over the US and International destinations. Some of the cities she has headlined include Hong Kong, Macau, Istanbul, Mumbai, Saint Martin, Saint Croix, Edmonton, Montreal, Quebec City, Shanghai, Shenzhen, Calgary, Las Vegas, Chicago, Los Angeles, Hollywood, Detroit, San Francisco, San Jose, San Diego, Milwaukee, Myrtle Beach, Salt Lake City, Oklahoma City and dozens more. Daniels has Headlined major Festivals including the Illuminate festival in Mumbai, India and Bump Music Festival in Stockton, CA. Daniels has played at many prestigious venues including Avalon (Hollywood), Vanity (Las Vegas), Blok (Hollywood), Sutra (Newport Beach), Artisan (Las Vegas) and Vertigo (Chicago).

54.     That we know of, Daniels is depicted in the photo in Exhibit "H" to promote Cave on its Facebook page. This Image was intentionally altered to make it appear that Daniels was

either a stripper working at Cave that she endorsed Cave, or that she was otherwise associated or affiliated with Cave

55.     Daniels has never been employed at Cave, has never been hired to endorse Cave, has never been otherwise associated or affiliated with Cave, has received no remuneration for Defendant's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

56.     Plaintiff Cañas is a Colombian born model now residing and working in the United States. Cañas has been in the industry for over twelve years and has found great success as a model, host, runway model, and actor. Cañas has worked runway shows in her native Colombia, as well as Mexico, Ecuador, United States, and most recently in Paris, France. She heads up the international campaign and was a contracted model for Curve and their worldwide lingerie line. In Dubai, United Arab Emirates, Cañas was chosen as the face of the Masters Golf Tournament, and was the image for the "International Surf and Sport Expo" in Orlando, FL. She has worked for international brands and labels such as SOHO, KISS underwear, Salon International, Zona Rosa, and Esteban Escobar. She has appeared in numerous TV shows like "FOX Sports" and on TV networks such as Telemundo and TV Azteca. Cañas continues to build an impressive profile and is constantly in demand between Miami, FL, New York, NY, and Los Angeles, CA. Cañas has over 545 thousand Instagram followers, over 10.5 thousand followers on Twitter, and over nine thousand Facebook likes.

57.     That we know of, Cañas is depicted in the photos in Exhibit "I" to promote Cave on its Facebook page. Thiw Image was intentionally altered to make it appear that Cañas was either a stripper working at Cave that she endorsed Cave, or that she was otherwise associated or affiliated with Cave

- 13 -

58.     Cañas has never been employed at Cave, has never been hired to endorse Cave, has never been otherwise associated or affiliated with Cave, has received no remuneration for Defendant's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

59.     Plaintiff Guerra is a Cuban model currently living in the United States. Her first national exposure came when she appeared in a lingerie spread for *FHM* in December of 2002 and became "*FHM*'s "Model of the Year" in 2004. Since then, Guerra has been featured in many magazines, including *DUB, Smooth, Escape,* and *Open Your Eyes*. Guerra has made multiple appearances on several Spanish language television programs such as El Gordo y la Flaca (The Fat Guy and The Skinny Girl). She has also became a staple in music videos, appearing in "Shake Ya Tailfeather" performed by Nelly, P. Diddy, and Murphy Lee, from the Bad Boys II soundtrack, 2003, "The New Workout Plan" performed by Kanye West, 2004, and in "Obsession (No Es Amor)" performed by Frankie J ft. Baby Bash, 2005, among others. In addition, Guerra has appeared in a commercial for Burger King's Tender Crisp Bacon Cheddar Ranch, a number of sketches on The Chappelle's Show, and the film, "National Lampoon's Dorm Daze 2." She lent her voice to the video game, "Scarface: The World Is Yours." In 2005, Guerra was voted Number 26 in *FHM*'s "Top 100 Sexiest Females" and has been named the winner of the magazine's "Best Butt Award". She also produced her own swimsuit calendars and accompanying "behind the scenes" DVDs and a 2006 DVD titled, "Vida Guerra: Exposed." She continues to be extremely in demand as a spokeswoman for fitness and fitness equipment, television shows, and movies. Guerra enjoys over 2,443,580 followers across Facebook, Instagram, and Twitter.

60.     That we know of, Guerra is depicted in the photos in Exhibit "M" to promote Cave

- 14 -

on its Facebook page. These Images were intentionally altered to make it appear that Guerra was either a stripper working at Cave that she endorsed Cave, or that she was otherwise associated or affiliated with Cave

61. Guerra has never been employed at Cave, has never been hired to endorse Cave, has never been otherwise associated or affiliated with Cave, has received no remuneration for Defendant's unauthorized use of her Images, and has suffered, and will continue to suffer, damages as a result of same.

62. Plaintiff Sugden is, and at all times relevant to this action was, is an English glamor model, actress, host, and spokeswoman who is one of Europe's most famous celebrities. Sugden has appeared in hundreds of magazines and is one of the most featured Page 3 girls of all time. Sugden was featured as a Page 3 girl as recently as December 2017. That made a tally for 2017 of five features. Sugden has been featured in a number of films and was a star competitor in Celebrity Big Brother. Sugden has an official subscription-based website and has marketed her own products including a calendar for many years. https://onlyfans.com/rhianmarie Sugden has been involved in a number of charities and is often a spokeswoman for the prevention of animal cruelty. Sugden has over 1 million Social Media Followers.

63. That we know of, Sugden is depicted in the photos in Exhibit "K" to promote Cave on its Facebook page. These Images were intentionally altered to make it appear that Sugden was either a stripper working at Cave that she endorsed Cave, or that she was otherwise associated or affiliated with Cave

64. Sugden has never been employed at Cave, has never been hired to endorse Cave, has never been otherwise associated or affiliated with Cave, has received no remuneration for Defendant's unauthorized use of her Images, and has suffered, and will continue to suffer,

damages as a result of same.

***Defendant's Business Activities and Misappropriation***

65.     Defendants operates Cave, where they are engaged in the business of selling alcohol and food in an atmosphere where nude or semi-nude women entertain the business' clientele.

66.     In furtherance of its promotion their promotion of Cave, Defendants own, operate, and control Cave's social media accounts, including its Facebook, Twitter, and Instagram accounts.

67.     Defendants used Cave's Facebook, Twitter, and Instagram accounts to promote Cave, and to attract patrons.

68.     Defendants did this for their own commercial and financial benefit.

69.     Defendants have used, advertised, created, printed, and distributed the Images of Plaintiffs, as further described and identified above, to create the false impression with potential clientele that each Plaintiff either worked at Cave, endorsed Cave, or was otherwise associated or affiliated with Cave.

70.     Defendants used Plaintiffs' Images and created the false impression with the public that Plaintiffs worked at or endorsed Cave to receive certain benefits from that false impression, including but not limited to: monetary payments; increased promotional, advertising, marketing, and other public relations benefits; notoriety; publicity; and an increase in business revenue, profits, proceeds, and income.

71.     Defendants were well aware that none of the Plaintiffs have ever been affiliated with or employed by Cave, and at no point have any of the Plaintiffs ever endorsed Cave, or otherwise been affiliated or associated with Cave.

- 16 -

72.     All of Defendants' activities, including their misappropriation and republication of Plaintiffs' Images, were done without the knowledge or consent of Plaintiffs.

73.     Defendants have never compensated Plaintiffs for the unauthorized use of Plaintiffs' Images.

74.     Plaintiffs have never received any benefit from Defendants' unauthorized use of their Images.

***Standard Business Practices in the Modeling Industry***

75.     It is common knowledge in the modeling industry that the hiring of a model for a commercial purpose involves a particularized methodology and process.

76.     The fee that a professional model, like each Plaintiff, will receive is negotiated by their agency, and involves consideration of, without limitation, at least the following factors: a) the reputation, earning capacity, experience, and demand of that particular model; b) where and how long the photo shoot takes place; c) where and how the images are going to be used by the client (*e.g.*, company website, social media, television commercials, billboards, or posters), known in the modeling industry as "usage"; and, d) the length of time the rights to use the photos will be assigned, known in the modeling industry at the "term."

77.     Most licenses to use a model's image are for one, two, or three year terms; but almost never is there a "lifetime" term.

***Defendant's Misappropriation of Plaintiffs' Images***

78.     Defendants were aware that, by using Plaintiffs' Images, they were violating Plaintiffs' right to privacy, Plaintiffs' right of publicity, and creating a false impression to potential customers that Plaintiffs worked at or endorsed Cave.

79.     Unauthorized use of Plaintiffs' Images deprives them of income they are owed

- 17 -

relating to the commercialization of their Images.

80. In addition, Plaintiffs allege that any the improper unauthorized use of their Images at issue in this case has substantially injured their respective careers and reputations, because of the negative connotations of false impression of association with Cave.

81. At no point was any Plaintiff ever contacted by any Defendant, or any representative of any Defendant, to request the use of any of Plaintiffs' Images.

82. No Defendants ever obtained, either directly or indirectly, permission to use any of Plaintiffs' Images.

83. No Defendants ever paid any Plaintiff for its use of her Images on any promotional materials, including Cave's website, Twitter, Facebook, or Instagram accounts.

84. Defendants used Plaintiffs' Images without their consent, and without providing remuneration, in order to permanently deprive each of the Plaintiffs of her right to use her Images.

85. Defendants' use of Plaintiffs' Images in some cases was also in violation of copyrights and/or licenses held by others, who had lawful relationships with Plaintiffs based on the standard business practices in the modeling industry.

86. Defendants' breaches of copyrights and/or licenses held by others likewise had the purpose and effect of injuring Plaintiffs in the ways complained of herein, as Plaintiffs were foreseeable victims of harm from Defendants' breaches.

## **FIRST CAUSE OF ACTION**
**(Violation of § 43 of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B): False Advertising)**

145. The advertisements at issue in this action were false and misleading under 15 U.S.C. § 1125(a)(1)(B) because no Plaintiff ever worked at or was in any way associated or affiliated with The Club, nor had they agreed to appear in Cave's advertisements.

- 18 -

146.    Given the false and misleading nature of the advertisements, they had the capacity to and did deceive consumers.

147.    Upon information and belief, the deceptive advertisements had a material effect on the purchasing decisions of consumers who attended Cave.

148.    Defendants' publication of these false and misleading advertisements on the internet had the capacity to and did affect interstate commerce.

149.    Even though Defendants were at all times aware that the Plaintiffs neither worked at nor endorsed Cave, Defendants nevertheless used Plaintiffs Images to mislead potential customers as to Plaintiff's employment at or affiliation with Cave.

150.    Defendants knew that their use of Plaintiffs' Images would cause consumer confusion as to Plaintiffs' sponsorship of, employment at, or other relationship with Cave.

151.    Defendants' use of Plaintiffs' Images caused consumer confusion as to Plaintiffs' sponsorship of, employment at, or other relationship with Cave, and the goods and services provided by Cave.

152.    Defendants' unauthorized use of Plaintiffs' Images created a false advertisement prohibited by section 43 of the Lanham Act, and Plaintiffs have been damaged in an amount to be determined at trial and are likewise entitled to punitive and exemplary damages.

## SECOND CAUSE OF ACTION
### (Violation of § 43 of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A): False Association)

153.    Defendants' use of Plaintiffs Images created the false impression with the public that Plaintiffs were affiliated, connected, or associated with Cave, or worked at, sponsored, or approved of Cave goods, services, or commercial activities.

154.    This was done to promote and attract clientele to Cave, and thereby generate revenue for the Defendants, for Defendants' commercial benefit.

- 19 -

155. Even though Defendants were at all times aware that the Plaintiffs were neither affiliated, connected or associated with Cave, nor worked at, sponsored, or approved of Cave's goods, services or commercial activities, Defendant nevertheless used Plaintiffs Images to mislead potential customers as to Plaintiffs' employment at or affiliation with Cave.

156. Defendants knew that their use of Plaintiffs' Images would cause consumer confusion as to Plaintiffs' sponsorship, affiliation, connection, association, or employment at Cave.

157. Defendants' use of Plaintiffs' Images caused consumer confusion as to Plaintiffs' employment at or endorsement of Cave and the goods and services provided by Cave.

158. Defendants' unauthorized use of Plaintiffs' Images created a false endorsement prohibited by section 43 of the Lanham Act, and Plaintiffs have been damaged in an amount to be determined at trial and are likewise entitled to punitive and exemplary damages.

## THIRD CAUSE OF ACTION
### (Common Law Right of Privacy - Misappropriation)

159. Defendants have appropriated each Plaintiff's likeness for Defendants' commercial purposes without authority or consent from Plaintiffs.

160. Defendant misappropriated Plaintiffs' likenesses by publishing their Images on Cave's website or related social media accounts as part of Defendants' advertising campaign.

161. Cave's website and social media accounts were designed to advertise and attract business to Cave and generate revenue for Defendants.

162. Plaintiffs are informed and believe and hereon allege that the manner in which Defendants posted and publicized their Image and likeness in a manner that was hidden, inherently undiscoverable, or inherently unknowable, in that Defendants published their image and likeness on social media threads that, over time, are (for example, but not limited to)

- 20 -

"pushed" down in time from immediate visibility.

163. Plaintiffs are further informed and believe and hereon allege that discovery will prove that Defendants' republicized Plaintiff's Image and likeness on various occasions, via different mediums, after the initial date of the posting of their image and likeness and through the filing of this complaint.

164. Plaintiffs are informed and believe and hereon allege that Defendants' republication of Plaintiff's image and likeness was altered so as to reach a new audience and/or promote a different product.

165. Upon information and belief, Defendants use of Plaintiffs' Images did in fact attract clientele and generate business for Cave.

166. At no point did any Defendants ever seek or receive permission or consent to use any Plaintiff's Image for any purpose.

167. Defendants were at all relevant times aware that they had never received any Plaintiffs' permission or consent to use their Images in any medium for any purpose.

168. At no point did Defendants ever compensate Plaintiffs for its unauthorized use of their Images.

169. Defendants misappropriation of Plaintiffs' Images in some cases was in violation of copyrights and licenses lawfully held by others, and Defendants' lack of respect for those rights was likewise a proximate cause of the harm done to Plaintiffs from Defendants' misappropriation of their Images.

170. Plaintiffs have been damaged in amounts to be proved at trial.

**FOURTH CAUSE OF ACTION**
**(Violation of North Carolina's Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. §**
**75-1.1 *et seq.*)**

171. Defendants' operated Cave's website and social media accounts in order to

- 21 -

promote Cave, to attract clientele thereto, and to thereby generate revenue for Defendant.

172.    As such, Defendants' operation of the website and social media accounts, and their publication of Images thereon, were in commerce, in that they involved a business activity and the day-to-day activities and affairs of Defendants in North Carolina.

173.    Defendants' published Plaintiffs' Images on Cave's website and social media accounts to create the false impression that Plaintiffs were either strippers working at Cave, endorsed Cave, or were otherwise affiliated, associated, or connected with Cave.

174.    As such, Defendants' intent in publishing Plaintiffs' Images was to mislead the public as to Plaintiffs' employment at and/or affiliation with Cave.

175.    Defendants' false advertising, misrepresentations, and breaches of their duties to Plaintiffs and the public were unfair, in that they were immoral, unethical, oppressive, unscrupulous, and substantially injurious to consumers in North Carolina.

176.    Defendants' false advertising, misrepresentations, and breaches of their duties to Plaintiffs and the public were deceptive, in that they possessed the tendency or capacity to mislead, or created the likelihood of deception, affecting members of the public in North Carolina and thereby causing injury to Plaintiffs.

177.    Upon information and belief, members of the public relied upon and were in fact deceived by Defendants' false advertising, misrepresentations, and breaches of their duties to Plaintiffs and the public.

178.    Defendants thus engaged in unfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce in the state of North Carolina, and caused injury to the Plaintiffs as complained of herein.

179.    Defendants' advertising practices offend the public policy of North Carolina insofar

- 22 -

as they constitute misappropriation of Plaintiffs' property rights in their own Images, breaches of copyrights and/or licenses held by others, and invasion of Plaintiffs' privacy, for Defendants' commercial benefit.

180.    Defendants' advertising practices are immoral, unethical, oppressive and unscrupulous insofar as they have sought to confuse the public for their own commercial benefit by implying that Plaintiffs are affiliated, endorse, are associated with and/or are strippers at Cave.

181.    Defendants' advertising practices cause substantial injury to consumers and the Plaintiffs by creating the false impression that Plaintiffs are strippers at, endorse, or are otherwise affiliated with Cave.

182.    There are no benefits to Defendants' advertising practices as set forth hereon except a benefit to Defendants own commercial interests.

183.    As a result of Defendants' unauthorized and misleading publication of Plaintiffs' Images on its website and social media accounts, each of the Plaintiffs' reputations was injured, and each of the Plaintiffs' ability to market herself as a model was injured.

184.    As a result of Defendants' unauthorized and misleading use of Plaintiffs' Images, Plaintiffs have suffered damages in an amount to be determined at trial, including punitive and exemplary damages.

185.    Plaintiffs are entitled to treble damages pursuant to N.C.G.S. Section 75-1.

186.    Plaintiffs are further entitled to an award of attorney's fees against and taxed to Defendants pursuant to N.C.G.S. Section 75-16.1

## FIFTH CAUSE OF ACTION
### (Defamation)

187.    As detailed throughout this Complaint, Defendants have published altered Images

- 23 -

of Plaintiffs in order to promote Cave to the general public and potential clientele.

188.    Defendants' publication of said Images constitutes a representation that Plaintiffs was either employed by Cave, that they endorsed Cave, or that they had some affiliation with Cave.

189.    None of these representations were true, , and violated Plaintiffs' rights to their images as well as copyrights and licenses lawfully held by others.

190.    In publishing Plaintiffs' altered Images, it was Defendants' intention to create a false impression to the general public that Plaintiffs were strippers working at Cave or endorsed Cave.

191.    Defendants were at least negligent in publishing Plaintiffs' Images because they knew, or should have known, that Plaintiffs were not employed by Cave, had no affiliation with Cave, had not consented to the use of their Images, and had not been compensated for the use of their Images.

192.    In the alternative, Defendants published the Images of Plaintiffs with actual malice, and their acts were gross and wanton, evidencing a reckless disregard for the rights of Plaintiffs,  because the Defendants they knew that Plaintiffs were not employed by Cave, had no affiliation with Cave, had not consented to the use of their Images, and had not been compensated for the use of their Images.

193.    Despite Defendants' knowledge and reckless disregard of the true facts, they nevertheless made the decision to publish Plaintiffs' Images to attract clientele and generate revenue for themselves.

194.    Defendants' publication of Plaintiffs' Images constitutes defamation per se under North Carolina law because said publication falsely accuses Plaintiff of having acted in a manner

- 24 -

– *i.e.*, working as a stripper and/or endorsing a strip club - which would subject each Plaintiff to hatred, shame, obloquy, contumely, odium, contempt, ridicule, aversion, ostracism, degradation, or disgrace, and/or could induce an evil opinion of Plaintiffs in the minds of right-thinking persons, and/or could deprive each Plaintiff of confidence and friendly intercourse in society.

195.     Defendants' publication of Plaintiffs' Images likewise constitutes defamation *per se* under North Carolina law because said publication would tend to impeach and injure each Plaintiff in her trade, business, and profession as a professional model.

196.     This is because any company or brand that sought to hire any of the Plaintiffs as a company or brand representative would be less likely to do so upon learning that she was a professional stripper and/or promoting as strip club, an inference which Defendants' publication of the Images support.

197.     Defendants' publication of Plaintiffs' Images likewise constitutes defamation *per se* under North Carolina law because, insofar as said publication falsely portrays each of the Plaintiffs as a stripper, it imputes unchastity to her.

198.     Defendants' publication of Plaintiffs' Image' caused Plaintiffs to suffer damages in an amount to be determined at trial and are likewise entitled to punitive and exemplary damages.

### SIXTH CAUSE OF ACTION
**(Negligence, Gross Negligence, and *Respondeat Superior*)**

223.     Plaintiffs are further informed and believe and hereon allege that Defendants maintain or should have maintained employee policies and procedures which govern the use of intellectual property, copyrights, publicity rights, and/or the image and likeness of individuals for promotional and advertising purposes which specifically prevent the *unauthorized and non-consensual* use of intellectual property, copyrights, publicity rights and/or the image and likeness

- 25 -

of individuals for promotional and advertising purposes.

224.     Further, Defendants should have maintained, or failed to maintain, policies and procedures to ensure that their promotional and/or advertising materials and campaigns were not deceptive or misleading in their advertising practices.

225.     Defendants owed a duty of care to Plaintiffs to ensure that their advertising and promotional materials and practices did not infringe on their property and publicity rights.

226.     Defendants further owed a duty of care to consumers at large to ensure that their promotional and/or advertising materials and campaigns were not deceptive or misleading in their advertising practices.

227.     Defendants breached their duty of care to both Plaintiffs and consumers by failing to either adhere to or implement policies and procedures to ensure that the use of intellectual property, copyrights, publicity rights, and/or the image and likeness of individuals for promotional and advertising purposes were not unauthorized, non-consensual, or false and deceptive.

228.     Defendants further failed to enforce or implement the above-stated policies and/or to communicate them to employees, and/or supervise its employees in order to ensure that these policies, along with federal and North Carolina law, were not violated.  Defendants breached their duty of care to Plaintiffs and consumers by its negligent hiring, screening, retaining, supervising, and/or training of its employees and agents.

229.     Defendants' breaches were gross and wanton, evidencing a reckless disregard for the rights of Plaintiffs.

230.     Defendants' breaches were the proximate cause of the harm Plaintiffs suffered when their Images were published without their consent, authorization, and done so in a false,

- 26 -

misleading and/or deceptive manner.

231.    As a result of Defendants' negligence and gross negligence, Plaintiffs have suffered damages and are entitled to recover compensatory and punitive damages from the Defendants in an amount to be determined at trial.

### SEVENTH CAUSE OF ACTION
**(Conversion)**

232.    Each Plaintiff is, and at all relevant times were, the exclusive owners of all right, title and interest in their Images, and have property interests thereon.

233.    By the conduct detailed above, Defendants converted Plaintiffs' property rights in their Images for their own use and financial gain.

234.    As a result of Defendants' unlawful conversion of Plaintiffs' Images, and publication of same, Plaintiffs have suffered damages in an amount to be determined at trial.

### EIGHTH CAUSE OF ACTION
**(Unjust Enrichment)**

235.    As set forth in detail above, Defendants published Plaintiffs' Images in order to promote Cave to the general public and potential clientele.

236.    Defendants' publication was for the purpose of creating a false impression to the general public that Plaintiffs were either strippers working at Cave or endorsed Cave.

237.    Defendants' purpose in publishing Plaintiffs' Images was to benefit commercially due to their purported association with, employment of, and/or endorsement by Plaintiffs.

238.    Upon information and belief, Defendants did in fact benefit commercially due to their unauthorized use of Plaintiffs' Images.

239.    Defendants have been enriched by their unauthorized control over, and publication of, Plaintiffs' Image because said publication has assisted Defendants in attracting clientele to Cave.

- 27 -

240.    Plaintiffs have not been compensated for Defendants' commercial exploitation of their Images, and thus any financial benefit which Defendants received due to said exploitation is unjust.

241.    As such, Plaintiffs have been damaged in an amount to be determined at trial.

## NINTH CAUSE OF ACTION
### (Quantum Meruit)

242.    Plaintiffs are each internationally known models who earn their livings appearing in, *inter alia*, commercials, advertisements, and publications on behalf of companies and brands.

243.    Companies and brands that choose to hire Plaintiffs compensate them for their appearances.

244.    Although Defendants have availed themselves of the benefit of being associated with Plaintiffs, and making it appear to potential customers that Plaintiffs either work at Cave, endorse Cave, or are otherwise affiliated with Cave, Defendants have not compensated Plaintiffs.

245.    Plaintiffs are therefore entitled to reasonable compensation for Cave' unauthorized use of their Images.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury.

## PRAYER FOR RELIEF

Plaintiffs respectfully request Judgment in their favor and against Defendants as follows:

(a) For the Defendants to be adjudged jointly and severally liable to Plaintiffs upon Plaintiffs' first through tenth causes of action;

(b) For an award of actual damages to be paid by Defendants to Plaintiffs, in an amount to be determined at trial, relating to Plaintiffs' first through tenth causes of action;

(c) For an order ***permanently enjoining*** Defendants from using Plaintiffs' Images for any

- 28 -

purpose;

(d) For punitive damages and treble damages under the Lanham Act, 15 U.S.C. § 1117, and the North Carolina Unfair and Deceptive Trade Practices Act, § 75-16;

(e) For all costs and attorneys' fees incurred by Plaintiffs in the prosecution of this Action pursuant to the Lanham Act, 15 U.S.C.§ 1117, and the North Carolina Unfair and Deceptive Trade Practices Act, § 75-16.1; and

(f) For such other and further relief as the Court may deem just and proper.

Respectfully submitted this 14th of October 2021.


BY: /s/ John V. Golaszewski
JOHN V. GOLASZEWSKI
N.Y. Bar No. 4121091
THE CASAS LAW FIRM, P.C.
1740 Broadway, 15th Floor
New York, NY 10019
john@casaslawfirm.com
T: 646.872.3178
F: 855-220-9626
*Attorneys for Plaintiff*


BY: /s/ Matthew R. Gambale
MATTHEW R. GAMBALE
N.C. Bar No. 43359
OSBORN GAMBALE BECKLEY & BUDD PLLC
721 W. Morgan Street
Raleigh, North Carolina 27603
matt@counselcarolina.com
T: 919.373.6422
F: 919.578.3733
*Local Civil Rule 83.1(d) Attorneys for Plaintiff*

- 29 -